IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ANGEL L. HORNE o/b/o, )
K.L. HORNE, )
　　　　　　　　　　　　　　　　　 )
　　　　　Plaintiff, )
　　　　　　　　　　　　　　　　　 )
　　　　v. ) 1:15CV902
　　　　　　　　　　　　　　　　　 )
NANCY A. BERRYHILL,[1] )
Acting Commissioner of Social Security, )
　　　　　　　　　　　　　　　　　 )
　　　　　Defendant. )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Angel L. Horne ("Plaintiff"), on behalf of her minor child K.L. Horne ("K.L.H."), brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Child Supplemental Security Income under Title XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.   PROCEDURAL HISTORY

Plaintiff filed her application for Supplemental Security Income on April 24, 2012, alleging a disability onset date of January 1, 2012. (Tr. at 14, 61, 127-35.)[2] Her application was denied initially and upon reconsideration. (Tr. at 61-92.) Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 93-94.) On March 5, 2014, both Plaintiff and K.L.H. appeared and testified at the subsequent hearing. (Tr. at 14.) Although the ALJ informed Plaintiff of her daughter's right to representation, Plaintiff chose to proceed without the assistance of an attorney or other representative. (Tr. at 33-37.) The ALJ ultimately issued a decision finding K.L.H not disabled within the meaning of the Act (Tr. at 14-27), and on October 20, 2015, the Appeals Council denied review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II.   LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

---

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #8].

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). A child under the age of 18 qualifies as disabled if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C.F.R.

§ 416.906. More specifically, the ALJ must follow a three-step sequential evaluation process to consider whether the child in question (1) has engaged in substantial gainful activity; (2) has a severe impairment; and (3) has an impairment that meets, medically equals, or functionally equals a listed impairment. 20 C.F.R. § 416.924(a).

At the third step, in determining whether a child's impairment is functionally equivalent to a listed impairment, the ALJ considers how the child functions in six domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for himself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). An impairment or combination of impairments functionally equals a listed impairment if it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a), (d). A child has a "marked" limitation in a domain when the impairment "interferes seriously with [her] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A marked limitation "is 'more than moderate' but 'less than extreme.' It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." 20 C.F.R. § 416.926a(e)(2)(i). A child has an "extreme" limitation in a domain if her impairment interferes "very seriously" with her ability to independently initiate, sustain, or complete activities, and is the equivalent of functioning that would be expected on standardized testing with scores that are at least three standard deviations below the mean. 20 C.F.R. § 416.926a(e)(3). For each of the six domains, the regulations provide descriptions of relevant skills and their applications for various age groups, e.g., preschool children, school-age

4

children, and adolescents, as well as examples of limited functioning within each domain. See 20 C.F.R. § 416.926(g)-(l).

III. DISCUSSION

In the present case, the ALJ found that K.L.H., a minor child, had never worked, and that she therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that K.L.H. suffered from the following severe impairments:

> attention-deficit hyperactivity disorder [("ADHD")], borderline intellectual functioning, phonological disorder, and disruptive behavior disorder.

(Tr. at 17.) The ALJ found at step three that none of these impairments met or medically equaled a disability listing. (Tr. at 17.) The ALJ then conducted a detailed analysis as to whether K.L.H.'s impairments, singly or in combination, functionally equaled the severity of the listings. Specifically, based on the requirements of 20 C.F.R. § 416.926a, the ALJ assessed K.L.H.'s functioning in the six domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for herself, and (6) health and physical well-being. (Tr. at 17-27.) The ALJ concluded that K.L.H. did not have an impairment or combination of impairments that resulted in either "marked" limitations in two domains of functioning or "extreme" limitations in one domain of functioning. The ALJ therefore concluded that K.L.H. was not disabled for purposes of the Social Security Act.

Plaintiff contends that evidence supports a finding of disability. Plaintiff's primary contention appears to be that K.L.H. has struggled with mental, speech, and behavioral disorders for "over 6 years now" and "has not got[ten] better even with her IEP." (Pl.'s Mot. [Doc. #10] at 2-3.) Specifically, Plaintiff points to K.L.H.'s diagnoses, including a speech

5

Case 1:15-cv-00902-TDS-JEP   Document 14   Filed 02/15/17   Page 5 of 12

disorder, ADHD, and borderline intellectual disability, along with the medical treatment and educational concessions she receives for these conditions, as conclusive evidence of her daughter's disability under the Act. (Pl.'s Br. [Doc. #11] at 2-8.) However, the question before the Court is not whether K.L.H. has impairments or whether her IEP adequately addresses her needs. Rather, the sole issue is whether substantial evidence supports the ALJ's decision that K.L.H.'s impairments failed to meet, medically equal, or functionally equal a listed impairment during the relevant time period. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (citing Craig, 76 F.3d at 589) (The issue before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence."). Under the Social Security regulations, the fact that K.L.H. has been diagnosed with ADHD, borderline intellectual disability, and speech disorder, and the fact that she qualifies for services and educational intervention, do not establish that she is disabled for purposes of Social Security. See 20 U.S.C. § 416.925(d) (noting that a claimant's "impairment(s) cannot meet the criteria of a listing based only on a diagnosis. To meet the requirements of a listing, [the claimant] must have a medically determinable impairment(s) that satisfies all of the criteria of the listing."). Instead, the ALJ must evaluate the impairments under the regulatory provisions, and the ALJ's decision must be upheld if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); see also Craig, 76 F.3d at 589 (holding that courts should defer to the Commissioner's findings if they are supported by substantial evidence).

In this case, the ALJ found that K.L.H. did not have an impairment that meets or medically equals the severity of a listed impairment. (Tr. at 17.) The ALJ further concluded

6

that K.L.H. did not have an impairment or combination of impairments that functionally equaled a listing. (Tr. at 17.) In reaching that determination, the ALJ discussed and adopted findings consistent with the opinions of examining mental health experts to conclude that K.L.H. was less-than-markedly limited in each of the six domains. The ALJ gave significant weight to the opinions of Dr. J.E. (Rick) Ricketson, who administered various tests and provided a psychological examination in 2012 and who subsequently conducted a consultative examination in 2014. Between May 24 and June 12, 2012, Dr. Ricketson, a licensed psychologist, administered the following tests: "Vineland Adaptive Behavior Scales – Second Edition (Vineland-II), Attention Deficit Disorder Evaluation Scales (ADDES): Home and School Versions, Brown ADD Scales for Children: Teacher and Parent Forms, and Child Behavior Check List: Parent and Teacher Forms." (Tr. at 260-69.) All of these tests are designed (1) to assess child's behavioral characteristics and, in the case of ADDES and Brown, ADHD characteristics in particular, and (2) to be completed by parents and teachers, rather than the child herself. Dr. Ricketson reviewed the results of the testing in detail.[3] In describing Dr. Ricketson's 2012 evaluation, the ALJ noted, in pertinent part, as follows:

> [T]he claimant's mother reported the claimant had difficulty listening to her teachers and mother; she put her hands on everything, including other peers at school; and she fought over toys and lashed out in anger easily. Behavioral observations revealed the claimant was alert; her speech clarity was mildly

---

[3] The test results are included in Dr. Ricketson's report, and Dr. Ricketson specifically relied on those tests to conclude that K.L.H. was "positive for ADHD" and to support a finding of "borderline intellectual functioning." (Tr. at 261.) Dr. Ricketson compared and reconciled the various results and considered that information, along with his behavioral observations, to reach his conclusions. Test results are relevant in determining "marked" or "extreme" limitations in functioning, and the ALJ must consider the scores "together with the other information . . . about [the child's] functioning, including reports of classroom performance and the observations of school personnel and others. 20 C.F.R. § 416.926a(e)(4)(i)-(ii)." Gee ex rel. S.G. v. Colvin, No. 5:14-CV-00521-FL, 2015 WL 5139187, at *7 (E.D.N.C. Aug. 12, 2015). "The interpretation of the test is primarily the responsibility of the psychologist or other professional who administered the test." 20 C.F.R. § 416.926a(e)(4)(iii).

impaired secondary to immature articulation; and speech, pace, intensity, and volume were adequate. The claimant's mood was adequately pleasant and cooperative during psychometric testing, though she was somewhat distractible and hyperactive during the less-structured parent interview; and she appeared mildly impulsive as well. In a free play situation, the claimant was only able to sustain attention to a toy or drawing task for approximately 2 minutes; rapport was easy to establish and maintain; she separated easily from her mother; her thought processes were concrete but relevant; and her affect was within normal limits. The claimant put forth a good effort on difficult problem-solving items; there was no difficulty following directions; and frustration was adequately tolerated. Testing revealed the claimant was functioning in the borderline range of intelligence, obtaining a Full Scale IQ score of 75. Further, the claimant showed signs of attention-deficit hyperactivity disorder, as the claimant appeared overly hyperactive and impulsive in the clinical setting. It was further noted that the claimant appeared to be a good candidate for psychostimulant medication for treatment of attention-deficit hyperactivity disorder. The claimant was diagnosed with attention-deficit/hyperactivity disorder, combined type, provisional; disruptive behavior disorder, not otherwise specified; borderline intellectual functioning; and phonological disorder, mild.

(Tr. at 19-20, 260-62.) The record reflects that K.L.H. was subsequently prescribed Vyvanse, a stimulant used to treat ADHD, which by all accounts helped with her behavior. (Tr. at 18, 23, 293, 319, 348-50.) In addition, K.L.H. began an ongoing course of therapy through both RHA Health Services and Fisher Park Counseling and continued supportive services per her IEP. (Tr. at 329-65, 367-77.)

The case came before the ALJ for a hearing on March 5, 2014, and at the conclusion of the hearing, the ALJ referred the matter for a psychological consultative examination. (Tr. at 58, 197.) On April 23, 2014, Dr. Ricketson evaluated K.L.H. pursuant to the ALJ's request. As part of the evaluation, Dr. Ricketson reviewed testing of K.L.H. conducted in November 2013, and also reviewed K.L.H.'s previous test results from Dr. Ricketson's own prior testing in 2012 (Tr. at 379.) As recounted by the ALJ, Dr. Ricketson made the following findings:

[T]he claimant was retained in kindergarten; and she received resource systems in all academic areas as well as speech therapy at school. It was further noted

that the claimant put forth good effort on mental status testing; and there were no unusual problems with posture, gait, or mannerisms. As to the claimant's daily activities and interests, it was noted that the claimant's mother took her to school and picked her up each day. Further, the claimant's mother reported the claimant would only do chores if she was told and reminded to do so, which include picking up toys, picking up clothes, and partially making up her bed with her mother's help. It was noted that the claimant enjoyed drawing; she enjoyed playing with her pet dogs; she played with other children on occasion, but got into conflict with the easily and then they do not want to play with her further. However, a mental status examination revealed the claimant appeared only overly mildly hyperactive, only mildly impulsive, and only moderately inattentive. Speech pace, clarity, intensity, and volume all appeared age-appropriate and adaptive. There was no evidence of pathology of thought content, including an absence of obsessions, phobias, suicidal/homicidal ideation, loosening of associations, or delusions or ideas of reference. The claimant's insight into her mental problems appeared adequate; her estimated intelligence approximates a full Scale IQ score of 75, falling in the borderline range of intelligence; and she did not demonstrate any significant motor or gross cognitive deficits. Social functioning appeared mildly impaired based on hyperactivity, impulsivity, and moderate inattentiveness based on behavioral observations.

(Tr. at 20, 379-82.) Dr. Ricketson did not find K.L.H. markedly limited in any domain. In fact, no health care professional, treating or otherwise, opined that K.L.H. had marked limitations.

Notably, Dr. Ricketson's opinions formed much of the basis for the ALJ's determination. (Tr. at 23.) As to the first domain, the ALJ found that K.L.H. had a less-than-marked limitation in acquiring and using information. The ALJ noted that K.L.H. had a full scale IQ Score of 75. The ALJ further noted that, despite K.L.H.'s borderline intelligence and kindergarten retention, Dr. Ricketson's 2014 examination reflected that her "speech, clarity, intensity, and volume appeared age-appropriate" and she "did not demonstrate any significant motor or gross cognitive deficits." (Tr. at 22.) Moreover, the opinions of Dr. Sharon Skoll and Linda Highsmith, the State Agency Medical Consultants, also posited a less-than-marked

9

limitation in acquiring and using information. (Tr. at 65.) The ALJ assigned these opinions "some weight" in light of their consistency with the objective evidence. (Tr. at 21.) Thus, substantial evidence supports the ALJ's determination.

As to the second domain, the ALJ found K.L.H. has less than marked limitation in attending and completing tasks. As to this domain, the ALJ noted Plaintiff had improved in this area when she began taking medication, based on Dr. Ricketson's evaluations. (See Tr. at 23, 379-82, 260-62.) The ALJ also noted that in the 2014 evaluation, K.L.H. "appeared only overtly mildly hyperactive and impulsive." (Tr. at 23.) Moreover, the opinions of Dr. Sharon Skoll and Linda Highsmith, the State Agency Medical Consultants, also posited a less-than-marked limitation in attending and completing tasks. (Tr. at 65.) As noted above, the ALJ assigned these opinions "some weight" in light of their consistency with the objective evidence. (Tr. at 21.) In contrast, the ALJ gave little weight to the opinions of later State Agency Consultants who opined, without explanation, that K.L.H. had no limitations in attending and completing tasks. (Tr. at 21, 76.) In light of the ALJ's evaluation of all of the above evidence in assessing the second domain, the Court concludes that substantial evidence supports her determination.

As to the third domain, the ALJ found that K.L.H. was less-than-markedly limited in terms of interacting and relating with others. This finding comports with Dr. Ricketson's finding that "rapport was easily established and maintained" (Tr. at 24, 261), as well as his ultimate opinion that K.L.H.'s "social and practical judgment and reasoning appears Borderline-Low Average" (Tr. at 381). Although the ALJ noted that K.L.H.'s speech sound disorder negatively affects her in this domain, the ALJ further recounted test results showing

10

K.L.H. "to be approximately 80% intelligible in conversation to an unfamiliar listener." (Tr. at 24, 257.) Finally, the ALJ noted that, despite Plaintiff's reports of K.L.H.'s conflicts with other children, K.L.H. herself "testified that she had friends at school." (Tr. at 24, 44, 381.) These factors clearly constitute evidence that "a reasonable mind might accept as adequate to support [the ALJ's] conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). In addition, the opinions of Dr. Sharon Skoll and Linda Highsmith, the State Agency Medical Consultants, also included a less-than-marked limitation in interacting and relating with others. (Tr. at 65.) Thus, substantial evidence supports the ALJ's determination.

Finally, nothing in the record suggests that the ALJ erred with respect to the remaining domains. As to the fourth domain, in terms of moving about and manipulation of objects, there is no indication in the record that K.L.H. suffers any limitations, and as to the fifth domain, there is no indication in the record that K.L.H. suffered any limitations in the ability to care for herself. (Tr. at 24-26.) As to the sixth domain, it does not appear that Plaintiff alleged any problems with K.L.H.'s physical health, and the ALJ found that K.L.H. had less than marked limitation in her health and physical well-being. (Tr. at 26.) As noted above, although K.L.H.'s speech/language disorder affects her capacity to communicate, there is no evidence that it markedly affects either her communication or her overall health.

In short, substantial evidence supports the ALJ's decision that K.L.H.'s impairments failed to meet, medically equal, or functionally equal a listed impairment.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Summary Judgment [Doc. #10] be

DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #12] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 15th day of February, 2017.

/s/ Joi Elizabeth Peake  
United States Magistrate Judge